The next case on the calendar is Yem v. Garland. Good morning, Your Honors. My name is Swati Srirangarajan, and together with Sylvia Viscato Sanchez and Professor Evangeline Abreu, I represent Mr. Funia. He is currently removed to Cambodia, even though at the time of his physical removal, he was not actually removable. There are two parts to our argument. I will argue the first part, which is that the IJ and the BIA did not apply the correct standard for due diligence, and my partner will argue the second part, which is these errors were prejudicial because Mr. Yem might have satisfied the due diligence standard if the correct standard hadn't applied. I have nine minutes on the clock. I'd like to stop a couple minutes before to reserve some time for rebuttal. My partner will argue for six minutes. The binding precedent most closely on point for the test for due diligence is Avenia v. Holder, and it tells us that the IJ and the BIA must consider three separate issues for determining when a person has exercised due diligence. The first prong of this analysis is when a reasonable person in the individual's position would suspect an error or an issue with their case, and then whether they took reasonable steps to investigate or pursue relief, and what they did when they finally learned or Yes, good, Your Honor. We believe that based on the Avenia holding, it has to be when the petitioner has constructive knowledge that there's a problem that he should apply for a motion. Well, the removal order became final in 2005, did it not? Correct. And he waived any appeal, so it is now a final order of removal. That's correct. At the time... And in between that time and 2008, when the Ninth Circuit decision was decided, he conferred with two lawyers in 2007 who told him that the current state of the law was, we can't do anything for you. That's correct. Don't waste your time. So why shouldn't we start the clock at least at 2008, if not 2005, in order to measure the period of time that elapsed? I don't believe, and correct me if I'm wrong, that there is much of a difference when you start the clock, whether it's 2005 or 2008 or 2006. Well, it makes a difference if we're talking 60 days versus 14 years. That's correct. But the question is, when was he under constructive knowledge of the fact that the law might change? Well, due diligence requires more than just when he accidentally discovered, doesn't it? It requires when a reasonable person in his position would have discovered, and I don't believe that in 2008 he would have been in a position to review Ninth Circuit opinions and recognize... If he had talked to an immigration lawyer after the Ninth Circuit decision came down, he might have learned it, right? That is correct. So if he had gone back, theoretically, every six months, after two attorneys in 2007, he might have discovered it. And what additional evidence of due diligence does he proffer? My partner's argument is more leaning towards that, but... That's the problem with splitting your time, is that we always hit you with questions. And she's welcome to address it if you want, but let me just tell you what my concern is. Yes. I see two items of evidence of due diligence. Two visits to lawyers in 2007, and then following his removal order, he had to check in every six months or so with ICE to find out whether they were going to give him a bag and baggage letter. Would you concede that ICE is under no obligation to tell him there may have been a change in immigration law that could be favorable to his case? Yes, but the question is not whether ICE was under an obligation. Well, question, counsel, yes or no? Yes. Well, yes, ICE is under no obligation. However, would a reason... So what additional evidence of due diligence do you have? Because the record is clear that he didn't do anything until what, 2022? 2019. But really what we're arguing is that what should he have done if he has been told by attorneys, don't bother looking? But how long does that protect him? For 30 years? 50 years? But Your Honor, the question before you, respectfully, is did the IG and the BIA apply the correct standard for due diligence, not whether they faxed sufficient evidence? You've got to have some evidence of due diligence, counsel, and I'm challenging the sufficiency of your evidence because that's all you've got, as far as I read the record. That's right, Your Honor, but again, the IG and the BIA have not shown that they have conserved this evidence, and we do believe that unlike in Lona v. Barr or Gula v. Garland, where the score held that there was no evidence, we do have a little bit more. We have more about the petitioner's circumstances. What more? That's what I've been pressing you on, counsel. That's more evidence do you have of due diligence? Right, but we're also looking at the circumstances and not just what steps he took. Give me specifics. What are you going to prove? Well, Your Honor, I think there's evidence in the record that he had seven children that he was responsible for, seven more with his partner. What does that have to do with due diligence and discovering the state of the law? In the sense that he... He was busy doing other things? Is that what you're arguing? A little bit, Your Honor. He does not have a high school education. Have you got a case that says that's admissible evidence of due diligence? There's a Fifth Circuit case and a Fourth Circuit case that did consider those circumstances as part of the due diligence analysis, yes. And we are saying... Did you cite those cases in your brief? In our brief? Yes, we did. Okay. Yeah, that was Lugo Resendez and Williams v. Garland. Okay. And the agency denied Mr. Williams' motion to reopen because it was filed a few years after the change in law. But as we have from Avignon v. Holder, the length of time alone does not control this jurisprudence. So you would agree that the period of time we're looking at could be as long as 14 years if we run the clock from 2005, when his removal order became viable? I believe it would be... Well, would you run the clock from 2008 or 2000? Okay, I'll give you three years credit. So that's 11 years. But at the end of the day... So now we're at 11 years. Right, but Avignon v. Holder tells us that there's no magic period of time that would be... Okay, but how long does he get to sleep on his rights before we finally say to him, I'm sorry, but as a matter of law, that ain't due diligence? Your Honor, this is a great opportunity for you to clarify that. Well, you may not like the rule. But the clarity would help because right now what we have is an emphasis on the calendar years. And we have from precedent that that is simply not enough. Well, I totally agree with you that you can't just look at 11 or 14 years and declare that's enough. But... Here's a question I've got that kind of fits into the questions that Judge Tolman has already asked. The BIA doesn't discuss any of the evidence that would support or not support due diligence. All it says is referring in the particular circumstances and then says, well, it's just been too long. Does the BIA have an obligation to give us detail as to what the arguments in favor of tolling are? I believe the law on that is the BIA has to show that it has at least reasonably considered all the facts under in the record. And we're saying our position... Does it have to detail what those facts are? Or does it just have to say, we've considered the circumstances and they are not enough without specifying what those circumstances are? They have to give us enough to understand the reasoning behind their opinion. And in the current BIA... Does that mean you're asking for just a remand to the BIA so that they can give us those reasons? That is correct. And once they've given those reasons, we can then, when it comes back up? Well, we are asking for a remand for a proper application of the Avogadro analysis because we believe that that has not currently happened. And what happens if we can look at them ourselves? I mean, I don't know that we're going to get anything more that you put in the record as to what might constitute evidence supporting equitable tolling. And we can see that the BIA is likely to say, or maybe even really, really likely to say, or even certain to say, it's not enough. It's already said it's not enough. It just hasn't given us the detail. So should we remand in that circumstance? Your Honor, yeah, my time is almost up, but I will say yes because we do need clarity on exactly what the law is on due diligence. Because as it stands, we're getting the status is that as long as you don't have, you know, you wait a certain number of years, and then that's a lacking of diligence, and that is not an appropriate application. So, counsel, if we send it back and the agency issues a new decision and says, we recognize that you talked to two lawyers in 2007, and he was good about checking in every six months with ICE, but that's just not enough to establish due diligence, would you agree, if it came back to us, that that would be substantial evidence to support the agency's determination that he did not exercise due diligence? Your Honor, that would show that the BIA did in fact apply the Avignon factors, and our argument is that they really did not. That would be no change from where we are right now, and he's already been removed to Cambodia. So, why do we need to send this back to the agency for what is essentially a ministerial act that's going to probably produce exactly the same result? But, Your Honor, I mean, I think that if we don't send it back, then we risk the agency continuing to deny, you know, valid motions to reopen and equitable. But my hypothetical is that it's not valid, that that's not enough. If we issue an opinion to that effect, that clarifies the law for you, doesn't it? I don't believe so, Your Honor, because Lona and Goulart both did that, and I do notice that my time is up, so you can stop me whenever you feel like it. I appreciate your answer. Yeah, I do believe that Lona and Goulart did that, and yet the law is still unclear, because the agency continues to not apply the Avignon factors. So, we do need some clarity on that, and also, if you do deny our motion, I think that then we would also need, like, the immigration bar would need some guidance on what they should tell their clients, should they, even after they're deported, should they keep consulting? Don't wait 11 years. I'm sorry, go ahead. Don't wait 11 years. Don't wait 11 years, but also, you know, he could have told them, come back next year, and he could have, you know, had, so, you know, and again, like, that would be posting. You think the lawyer in 2007 should have said, but check in with me every year or so, because the law's changed. That would have helped our client. Our client had no idea, he had no reason to know that there already. So, it's not the lawyer's fault that he didn't tell him that. It's just, this is such a You wouldn't claim that was ineffective assistance? No, we would not. In fact, he didn't engage either of those two lawyers, did he? No, he went for free consultations, which is the other point, that it's an additional financial burden for immigrants in our client's position to keep going back to attorneys when there's such little hope already for a change in law. I mean, this is a really rare thing to happen. Okay. Thank you, Your Honor. Thank you. Okay. All right. Sorry. Okay. Good morning, Your Honors, and may it please the Court. My name is Silvia Vizcardo-Sanchez. Specifically, I will be addressing why the error that my co-counsel just described was prejudicial error. Although Mr. Yim's motion to reopen was filed more than two years after the change of law, his case is distinguishable from Lona v. Barr. Wait a minute. You said two years. I thought we were talking 11. Now you're moving the goalposts on me. No. So, it was filed, it was, what I'm mentioning that is because in Lona v. Barr, it was two years after the change of law. So, I'm just saying that it The change of law occurred here in 2008, did it not? I thought your co-counsel conceded that. No, Your Honor. I'm just comparing it to Lona v. Barr. In Lona v. Barr, the change of law, they filed the motion to reopen two years after the change of law, and in our case, we are conceding that it was more than two years after the change in law. Okay. But either way, in Lona, this Court did hold that the petitioner in Lona was not entitled to equitable tolling because she alleged no facts suggesting a diligent pursuit of her rights in the intervening years between her removal and the change of law. Similarly, in Goulart v. Garland, this Court also denied equitable tolling because the petitioner did not support his motion with a declaration or any other evidence concerning his actions that would show his diligence. But unlike the petitioners in Lona and Goulart, Mr. Yebb did present facts throughout his case indicating that he was diligently pursuing his rights under his circumstances. For example, my co-counsel had mentioned the consultations with the immigration attorneys in 2007 to inquire about his options at the removal order. Both attorneys did inform him that could be done in his case, which was accurate at the time, but neither mentioned that a future change in the law might give him a chance to reopen his proceedings. In fact, the attorneys specifically told him to not waste time talking to more attorneys. And thus, two qualified attorneys told Mr. Yebb in 2007 that he had no recourse and he had no reason to believe from those conversations that he should be watching for a subsequent change in the law. Moreover, the fact that the attorneys did not specifically foreclose the possibility that there might be a change in the law is not enough to place Mr. Yebb on inquiry notice that the law could potentially change. And although the consultations with the attorneys demonstrate Mr. Yebb's diligence efforts following his removal proceedings, it is only a small part of the facts. Under a Vagyon review... Do you have anything after 2008 though? Right. So what I'm trying to get at, Your Honor, is that under a Vagyon review of petitioner's diligence must be fact-intensive and case-specific, and it must assess the reasonableness of petitioner's actions in the case. The BIA and IJ should have considered Mr. Yebb's limited financial means and educational level, specifically that Mr. Yebb dropped out of high school when his father passed away. And as a result, he has only been managed to work manual labor jobs, most recently in the dry cleaning business. And as a result, with those limited economic means that he has, he had to provide for his seven children, his partner, and her seven children. It is therefore reasonable for someone like Mr. Yebb, someone who did not graduate from high school, who learned English as a second language, to believe that pleading to his conviction would close all possibilities of relief, especially after receiving confirmation from those two attorneys in 2007. Counsel, how do we square this with what the Supreme Court has said time and again about adjudicating immigration cases in such a way to avoid long delays in finality? I mean, you're essentially advocating for what could be an unlimited amount of time, depending on the particular circumstances of a poor, uneducated person who has been ordered removed in 2005. I mean, we're 18 years down the road, and I recognize that he did get removed to Cambodia. But at some point, where does the law draw the line and say, this is too long? Well, under Evagen, it does have to be a case-by-case analysis and considering, you know, taking into account all of the petitioner's particular circumstances. In Mr. Yebb's case, he did have to check in with ICE for 15 years, the whole time, thinking that he was removable. But wasn't that because Cambodia wasn't taking people back at the time that he was initially ordered removed? Correct me if I'm wrong, but the change that, at the time that his criminal attorney told him, gave him that advice, that was actually incorrect at the time. Like, they actually were accepting deportees. Okay, but that's why he had to check in, right, with the agency, was to determine whether or not they were actually going to remove him. I mean, he wasn't checking in with the agency every six months to see if the law had changed. No, Your Honor, but if he was eligible to be removed from 2005 since the removal order, a reasonable person in Mr. Yebb's position with limited educational level would assume that if he had to check in consistently with an ICE officer for 15 years, that he was still removable. Counsel, I wish I had a better understanding than I do of why this agency doesn't act more promptly than it does. And I can't tell you how many of these cases I see where we uphold the removal orders and then, as far as I can tell, nothing happens. I mean, I sometimes wonder why we're spending so much time on these cases if the agency isn't going to do anything with our rulings. Right. Correct, Your Honor. We totally agree because that goes to the argument that these cases should be final and all that, but if it waited 15 years to deport him, then that also goes against that fact. Well, maybe the government lawyer can enlighten me on that score. Right. But, you know, for 15 years, he did check in with ICE. He did think that he was removable. We're not arguing that it's ICE's job to inform him of a major change in law. We're just arguing that someone in Mr. Yebb's position, you know, someone with no knowledge or who is current on immigration laws, if they're consistently checking with an ICE officer, that just reinforces his—and the ICE officer doesn't inform him at any point during those check-ins that, you know, you're no longer removable. Like, so by him consistently checking with ICE— Do you have any case from any circuit that's even close to 14 years or 19 years? No, Your Honor. I don't believe we do. So this would be the longest period of time, so far as you know, of any circuit court in the country, if we find that equitable tolling can cover this period of time. In terms of length, Your Honor, I do believe so. However, you know, we're just trying to point out to the court that we really do need to go along with the factors in the bargain and really consider all of his particular circumstances and just that, you know, in his—I don't think a lot of people in this case might have been going on to ICE check-ins for 15 years. This is very particular to him. And the fact that he had spoken with you know, he did try to consult with attorneys in 2007 after the removal order, but they did tell him, you know, there's no recourse, don't waste your time talking to more attorneys. So someone, you know, in his educational level— Which in 2007, you would agree that's not an effective assistance of counsel because that was the state of the law. Yes, Your Honor. We're not arguing ineffective assistance of counsel, just that if they had, you know, if they told—when someone's told, you know, there's no recourse for you, there's no relief for you, stop wasting your time, you would work, you know, their word for it because their attorneys, they would know more than you for someone in his position. And so that—we're just bringing it up just to explain why he didn't continue consulting with attorneys. The fact that he had limited financial means also, we're just bringing it up also to show that he wouldn't have been able to hire an attorney to look into it would have considered the contact of Mr. Yim's circumstances as the Fourth Circuit did in Williams v. Garland. Like Mr. Williams, Mr. Yim is also limited means, although he was able to consult with two immigration attorneys and check in with ICE officers who would reasonably expect it to have no—informative of a major change in the law, but also it cannot be expected of a lay person like Mr. Yim to have checked in with an attorney once every year, especially after those two attorneys told him in 2007 that there was no recourse in his case and that he should not waste time talking to more attorneys. And he did attend those ICE check-ins for 15 years, the entire time thinking it was removable. Simply put, he had no reason to believe that it was worth consulting with more attorneys. And lastly, under the third prong of the Evolvian analysis, Mr. Yim did act promptly after definitively learning about the change in law. It was not until a check-in in October 2019 that ICE took Mr. Yim back into custody, and he was able to definitively learn about the change in the law from his new attorney. And that was because he had a lawyer from one of the immigration services. Correct, Your Honor. So he had pro bono counsel at that point. But after finding out about the change in law, he did file his motion to reopen within 27 days, less than a month after finding out about the change in the law. Therefore, had Mr. Yim—it's suggested that had Mr. Yim been taken into custody sooner, he would have learned about the change in the law sooner and therefore would have also filed his motion to reopen sooner. All of these facts do demonstrate that Mr. Yim was not sitting on his rights—I'm sorry, am I supposed to go to three? Okay, sorry. All of these facts do demonstrate that Mr. Yim was not sitting on his rights or his duties, and that he was diligent considering his particular circumstances. However, the BIA did not consider the attorney consultations from 2007, and neither the BIA nor the IJ addressed any of Mr. Yim's circumstances in their decisions. That was not in the record before the order? They just didn't talk about it? They didn't talk about it in their decisions. Right, but they did have the evidence in the record. Correct, Your Honor. Okay. Therefore, the BIA erred and abused its discretion when it denied Mr. Yim's motion without consideration of all of the evidence. Ultimately, Mr. Yim was not removable when the Department of Homeland Security removed him to Cambodia in 2020, and he would not be found removable had he been tried today. Okay, I think we've exceeded time. Great. Great. Thank you. Thank you. Ms. Do, whenever you're ready. Good morning, Your Honors. Linda Do for the respondent at the United States Attorney General. Here, the Board reasonably denied Petitioner's motion to reopen and terminate his 2005 removal order, where he filed his motion over 14 years after the removal order sought to be reopened, and over 11 years after the pertinent change in law providing a basis for reopening. Petitioner further failed to show what efforts, if any, he had made during that period of time to discover the change in the law or pursue reopening, or pursue relief from removal. Sorry, Your Honor. The court has recognized that the agency may equitably told the statutory deadline based on a change in the law. However, due diligence is required. This court explained that in assessing due diligence, it looked to whether a petitioner acted reasonably in discovering the change in the law or pursuing relief from removal until he definitively learned of the change in the law. Let me ask you a question, if I may. Assuming that the request was timely, which, of course, is what we're debating, but assuming that it's timely, do you dispute that he's entitled to relief? That is to say, he's saying that, well, you know what, it turns out it's actually not an aggravated felony. So, do you dispute the entitlement to relief if the requests were timely? I believe it's a possibility, Your Honors. Again, it was just simply not the merits of the case here. And it's, you know, the agency did not reach the merits. The petition did not show that he warranted reopening. And that's required in this instance. The petitioner had a 2005 final removal order that was executable. But the removal order was premised upon it being an aggravated felony, correct? And we now know that it's not. Correct, Your Honors. But in 2005, that was the correct law at this time. Right. So, the final removal order was proper, issued, and Petitioner did waive any appeal of that removal order, thereby rendering it a final removal order. No, I get that. Let me ask you this. Is the BIA required to articulate or describe the evidence? Or is it enough for the BIA simply to say the particular circumstances aren't enough? We've got a fair amount of case law that says the BIA is supposed to lay it out so that we can review it. Yes, Your Honors. The board is required to articulate its decision in terms to show that it had considered the facts of the case. Here, I'd like to clarify that in Petitioner's initial motion to reopen before the immigration judge, the initial affidavit, there was no mention of any free consult with immigration attorneys in 2007. According to that evidence, it wasn't before the immigration judge and the proceedings below. Petitioner filed an amended affidavit with his appeal to the board. Yeah. Are you saying that that evidence was not properly before the board? Yes, Your Honors, because it wasn't set forth before the immigration judge below. But nonetheless, the board, I believe the board considered his petitioner's argument, and nonetheless found that the petitioner did not show that the immigration judge erred in his decision. Petitioner argues that, you know, he consulted two immigration attorneys in 2007, but that despite that claim and argument, it didn't show any error in the immigration judge's decision. I think this court's decision in Estrada Espinoza in 2008, to discover that he knew the law. Excuse me. Let me come back to the question I asked you. Is the board under no obligation to describe the factors that the petitioner has advanced in favor of equitable tolling? Or is the board sufficiently discharged its responsibilities when it refers to circumstances without describing them? I'm going to get the agency is not required to parse out each evidence in support of a claim, Your Honors. It uses specifies decision in terms of show that it considered the arguments raised by the petitioner on appeal, and which it did, and explain its decision. And as I'm here, the board explained that regardless of petitioner's argument, it still didn't show that the board immigration judge had erred in its decision. And this is appeal from an immigration judge's excuse me. This is not your fault. The audio here in the courtroom has got lots of echoes, and I'm having trouble understanding you. Talk slowly in response to the question and say as few words as you can consistently you giving an answer. My question is, does the board have an obligation to describe the circumstances instead of merely referring to them without describing them? Your Honors, the board is not required to parse each or write and exegesis on every piece of evidence submitted. It needs to articulate its decision to show that it considered the arguments and evidence raised. And here the board indicated that petitioner did not show any error and the refers to the particular circumstances without describing them. Is the board required to describe the actual circumstances in its decision? That's a yes or no question. I would argue not each individual circumstance. No, Your Honors. Now let me ask the question again. Just make sure I understand your answer. Even though there may be multiple circumstances, does the board discharge its responsibility without describing any of the circumstances? Your Honors, this is in conjunction with the immigration judge's decision. That's a yes or no question. Again, Your Honors, do you not believe that the board is required to parse each individual piece of evidence provided by the immigration? That's not my question. Does the board discharge its responsibility describing nothing? You said they're not required to describe everything. My question is the other end. Can they get away with describing nothing? Your Honors, the board said that it had petitioner's circumstances, and that's the circumstances that petitioner set forth in his appeal to the board. You still didn't answer the question, but I'll give up. I mean, is it a yes or no? Your Honors, I believe that the board had stated that it had considered petitioner's circumstances as set forth in his appeal. I do not believe that the support of those circumstances. But the board is required to show that it considered the specific factors and evidence in support of this particular case. Moving forward, Your Honors, Petitioner here did not show what efforts, if any, he had made between following the court's decision in 2008 up until 2019 to show that he made any efforts to discover this change in the law or pursue relief from removal, which is the courts has held was required for showing of due diligence. Here, Petitioner provides a number of arguments as to why his neglect and inaction for 11 years was reasonable. And this court has explained that excusable neglect is not a basis for equitable tolling. Among those arguments, Petitioner argued that he received ineffective assistance or bad advice from his original counsel, that there was a circuit court split, that Petitioner was a layman, and that Petitioner had consulted two immigration attorneys in 2007. Again, Petitioner's arguments are simply arguments in forth of of the two attorneys in 2007. Again, this was not set forth in his original affidavit to the immigration judge. And additionally, Petitioner indicated that this was simple to consults, as Petitioner did not retain counsel, and Petitioner indicated that he had simply referred to the two immigration attorneys to see if there was a way to get rid of his removal order. He did not indicate that there was a question about any other possibility of relief from removal or show that it was a reasonable to sit on his rights for 11 years. You know, here's my problem with this case, and it's very well sketched out. We have someone who's not very well educated, who is told by some lawyers fairly early on, there's no hope. When he's finally told by lawyers quite a long time afterwards that there is, has been a change in law, and there's a fairly prompt movement. I mean, I get why this is a difficult case, and that we shouldn't let these things drag on forever. Has the government considered mediation in this case? I don't want to misrepresent your honors, but I believe that we had considered this case for alternative form of relief, but no response was given. But again, your honors, I would have to revisit the docket on that. You know, this is not your fault that I can't hear you, that there's so much echo. This is a yes or no. Has the government considered court mediation? We have a mediation unit. Has the government considered doing mediation through the Ninth Circuit? Not certain. I'm going to say, I do not believe so, your honors. Was that a yes or a no, or I don't know? No, sorry. No, no. I believe the answer is no. No. Okay. Would the government consider mediation? No, your honors. Petitioner has, as opposing counsel indicated, Petitioner has been removed to Cambodia, accordingly. And Petitioner has not shown that the removal was improper, where he had a final executable removal order, did not show that reopening or the removal had been terminated, and Petitioner did not have a stay of removal at the time of his removal. Accordingly, Petitioner's respondent doesn't believe that mediation is appropriate in this instance. Again, Petitioner, for due diligence, Petitioner was required to show that he had made some effort to investigate the change in the law or pursue a relief from removal. And Petitioner did not show that he made reasonable efforts in doing so, where he sat on his rights for over 11 years. In light of the foregoing, respondent believes that the board's denial of the motion to reopen was reasonable. If there are no further questions, your honors. I just have one, counsel. I just have one practical question. We are informed that there are more than a million cases pending adjudication by the agency. Is that correct? That, I'm not certain, your honors. Not comfortable speaking to that. I don't know. You don't know what any of those numbers are. The concern I have is with so many cases pending, I mean, this would add an additional burden back on the agency to take yet another look at a case that it hasn't examined for 14, 19 years, 14 years. Yes, your honor. As this court noted in LORNA, there is an interest in finality, and that finality is not negligible. Well, and it's also a resource allocation question. I agree, your honors. Okay. Thank you. Great. Thank you. I'll give you two minutes. Thank you. I have a few points to make, but I'll start because you asked about whether, you know, the length of time issue. There are a few cases, a couple of them within this circuit, where there was a pretty lengthy period of time, and 9th Circuit remanded back. Can you be a little more specific? Yes. Lee v. Barr was a change of law case. Actually, the law changed 14 years after his physical removal from the United States, but the 9th Circuit still sent it back for a consideration of the diligence factors. Ramirez-Perez was an ineffective assistance of counsel case. Law changed about 8 years, I believe, or no, I think that was 12 years. Sorry. Again, this court held that not applying the avenue of factors was an abuse of discretion. Lugar sent us a 5th Circuit case that was an 8-year lapse with no steps because the attorneys told them there was nothing to be done. So I do want to move on to my other points unless there are more questions about that. So the answer to my question, I think, was that if we were to rule in your favor, this would be the longest delay that we had countenanced. I mean, you know, it's not a length Olympics, your honor, but it would be one of the longer ones, correct? Not one of, the. I think Lee v. Barr had 14 years, I mean, the law changed after 14 years. Okay. Fair enough. The government also said that this was more like neglect rather than, you know, an extraordinary circumstance. I just want to point out that the negligence standard imputes a constructive knowledge already, like he should have known there was a change of law, therefore he didn't act. Our client had no reason to know there was a change. But isn't there, in the law of due diligence, isn't there a notion that you have to do something affirmative? You can't sleep on your right. That's correct, your honor. But the law of due diligence, I think, in this case, the Avignon case was about ineffective assistance of counsel, where you have some measure of control over what, you know, you know your attorney, there are some red flags you can look out for. This is a change of law that happens completely external. Right. This is not ineffective assistance of counsel. No, it isn't. But we are applying the same standard that came out in ineffective assistance of counsel. Well, that's the question, should we, isn't it? That would be great for you to clarify. We believe that it is still possible to apply, but it's just that this is another additional consideration that it is that much harder for petitioners in their shoes to recognize the change in law. And the removal was improper when they did. They removed him in 2020. Two days later, the board gave him an emergency stay of his removal, and he was in the middle of appealing his case when they did that. So they did not remove him at a time when it would have been like, you know, it was not meaningless that they removed him two days before the emergency stay. And finally, I think the point about whether the immigration judge had all the facts before them, the board had the updated declaration. They did not say that, you know, they're not considering the additional facts because the immigration judge did not. They did not remand back for the immigration judge to consider them. And the government has used the facts in the updated declaration in their own the Supreme Court holding of Santos-Zacarias that the government has effectively waived the objection based on that. And so, go ahead, sir. The facts that the petitioner failed to raise this issue before the immigration board at this point is not a jurisdictional bar because of Santos-Zacarias. Thank you. Thank you to both sides. And we want to thank in particular the and your brief was excellent. Great. Thank you. The case has been submitted. Good job, counsel. Before we hear the final case, we'll take a five-minute break. All rise.
judges: FLETCHER, TALLMAN, LEE